**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James ALLSENBERRIE, Defendant-Appellant.**

**No. 16890.**

United States Court of Appeals, Seventh Circuit.

April 17, 1970.

Robert S. Bailey, Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty., William T. Huyck, Chicago, Ill., John Peter Lulinski, Michael B. Nash, Asst. U. S. Attys., of counsel, for appellee.

Before KILEY, CUMMINGS and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Defendant-appellant James Allsenberrie was found guilty by a jury under a two-count indictment charging violations of 18 U.S.C. § 659. Count I of the indictment charged the defendant with stealing 17 cartons of merchandise from the Terminal Transport Company on or about November 7, 1966, while the goods were traveling in Interstate Commerce. Count II charged the defendant with possession of 12 of the stolen cartons on November 10, 1966. Defendant Allsenberrie was sentenced to ten years imprisonment on each count; the sentences originally set to run consecutively for a total of twenty years. On motion for a reduction of the sentence, the sentence was reduced to provide that the sentence on each count would run concurrently. From the jury finding of guilty and the sentence of 10 years, defendant appeals. We affirm.

Defendant Allsenberrie was employed as a dockman for Terminal Transport Company and reported a shortage of 17 cartons of garments. Three days later on November 10, 1966, an F.B.I. agent appeared before a judge of the district court and executed an affidavit for a search warrant alleging that the stolen property was located at an establishment known as Bob's Bargain Nook and owned by Robert T. Chveja.[1] That affidavit provided in relevant part as follows:

And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: that on 11/9/66, a confidential informant, who has furnished reliable information in the past, advised your affiant that James Allsenberrie, who is employed as a dockman by the Terminal Transport Company, Inc., on 11/7/66 stole 17 cartons of garments from the Terminal Transport Company, Inc., and took them to the Bargain Nook at 6020 S. Archer, part of which were stored in the one and one-half story frame building, part in the garage and part in a trailer without wheels on the same property west of the buildings; further, that on 11/10/66, Ray Hunter, Northern Regional Manager, Terminal Transport Company, Inc., Forestview, Illinois, advised that their records reflect a shortage of 17 cartons of garments being shipped under Terminal Transport Company, Inc., Pro Number 5775025, from Wernar Brothers, Dothan, Alabama, to Wernar Brothers, Geneva, Illinois, and that these garments are valued in excess of $100. He further advised that Terminal Transport Company, Inc., dockman James Allsenberrie in performing his duties was responsible for the han-

---

1. Robert T. Chveja was charged as a co-defendant with Allsenberrie under Count II of the indictment. Chveja, however, became a fugitive and was unavailable for trial in the district court.

dling of this shipment. Later, on this same date, Hunter advised that an employee of the dock, who had furnished him reliable information in the past and whose identity he declined to furnish, told him, Hunter, that Allsenberrie had taken the aforementioned 17 cartons of garments on 11/7/66 and had taken them to the Bargain Nook located at 6020 South Archer, Chicago, Illinois. This employee also told him that the goods had not been disposed of as yet and that they were still located at the above-mentioned address.

Your affiant physically observed this location on 11/10/66 and did note that the buildings matched the description as furnished by the above sources and that there is a forty foot aluminum trailer without wheels parked west of the buildings.

A warrant was issued on the affidavit and executed by agents of the F.B.I. on the same day resulting in the seizure by agents of the 12 cartons of garments— the knowing possession of which defendant Allsenberrie was charged in Count II of the indictment.

Defendant filed, prior to trial, a motion to suppress the evidence obtained via the November 10 search. The trial judge refused to hold a hearing on the motion to suppress finding that the defendant Allsenberrie was without standing to raise the constitutional issue presented under the Fourth Amendment.

■ The finding of the trial judge that defendant lacked standing to challenge the reasonableness of the search is the first allegation of error raised on appeal. Defendant Allsenberrie contends that since Count II of the indictment charges him with possession of the stolen goods on November 10, the day of the search, such finding of constructive possession should be sufficient to give the defendant the requisite standing.

We agree that the defendant should have been held to have the proper standing to challenge the reasonableness of the search. Rule 41(e) of the Federal Rules of Criminal Procedure provides in relevant part that:

A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for the use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. * * *

■ The United States Supreme Court in Jones v. United States, 362 U. S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), interpreted the meaning of "aggrieved party" and thus established who had standing to question the validity of a government search. In *Jones* the defendant sought to suppress a quantity of narcotics seized under an allegedly invalid warrant. The district court and court of appeals held that since the defendant had neither established that he had more than a licensee's interest in the premises nor that he was in possession of the narcotics, he lacked standing to raise the motion. The Supreme Court rejected the first reason for a denial of standing stating, "[A]nyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him." (362 U.S. at 267, 80 S.Ct. at 734.) As to the second ground—lack of possession—which directly relates to the facts of the instant case, the Supreme Court found that since the basis of the charge against defendant was possession of narcotics, it would be a "squarely contradictory assertion of power by the Government" (362 U.S. at 264, 80 S.Ct. at 732) to indict defendant for possession of narcotics but oppose defendant's motion to

suppress because he did not have the requisite possession for standing:

[T]o hold that petitioner's failure to acknowledge interest in the narcotics or the premises prevented his attack upon the search, would be to permit the Government to have the advantage of contradictory positions as a basis for conviction. Petitioner's conviction flows from his possession of the narcotics at the time of the search. Yet the fruits of that search, upon which the conviction depends, were admitted into evidence on the ground that petitioner did not have ·possession of the narcotics at that time. The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government. The possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41(e).

(362 U.S. at 263–264, 80 S.Ct. at 732.)

Similarly, Count II of the indictment in the instant case charges defendant Allsenberrie with possession of twelve stolen cartons of goods on November 10, the date of the search. To charge defendant with possession of the stolen goods and then find that he lacks the requisite possession in order to challenge the validity of the search we believe to be the exact inconsistent position to which the Court in *Jones* was directing itself.

The government distinguishes the *Jones* decision by limiting its application only to cases where the sole basis of the offense, as in the cases of narcotics, is possession. See United States v. Konigsberg, 336 F.2d 844 (3d Cir. 1964). In *Konigsberg* the court held that since possession was only one element of the

crime involved and proof of possession alone was not enough to convict, the *Jones* rule did not apply.

We reject such a very limited application of *Jones*. The United States Supreme Court in characterizing its holding in *Jones* in a later case stated:

[W]e held that when, as in *Jones*, possession of the seized evidence is itself an essential element of the offense with which the defendant is charged, the Government is precluded from denying that the defendant has the requisite possessory interest to challenge the admission of the evidence.

Simmons v. United States, 390 U.S. 377, 390, 88 S.Ct. 967, 974, 19 L.Ed.2d 1247 (1968).

Thus the requirement of the *Jones* case is not that proof of possession alone be sufficient to convict but only that possession be an essential element of the offense. We find that Count II of the indictment charging Allsenberrie with knowing and willing possession certainly charges possession as an essential element of the offense. As the Court of Appeals for the First Circuit stated in rejecting the identical government argument that *Jones* should be limited to its exact facts:

It is still "squarely contradictory" for the government to charge out of one side of its mouth that the defendant had possession, even though in addition to possession the government must ultimately prove other matters, and to say out of the other that the defendant, as movant, lacked standing because he did not have possession. The defendant still faces the "dilemma," to employ the Court's characterization, [*Jones* Court] of having to assist the prosecution in its ultimate proof by self-incrimination in the very case, whether possession constitutes the offense, or only part of it. The government would still "have the advantage of contradictory positions as a basis for conviction."

Niro v. United States, 388 F.2d 535, 537 (1st Cir. 1968).

We agree with the First Circuit's interpretation of *Jones* and find the court below erred in not holding a hearing to determine the reasonableness of the search.

■ The defendant urges us now to remand the case to the district court for an evidentiary hearing to determine if the search was constitutionally permissible. We think it is appropriate for this court to decide the question of the constitutionality of the search here and decline to remand. See Jones v. United States, 362 U.S. at 267, 80 S.Ct. 725.

■ We find the affidavit upon which the search warrant was based [see pages 1211, 1212 *supra*] was constitutionally sufficient. In Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the United States Supreme Court established a two-pronged test to determine the sufficiency of an affidavit based on information supplied by an informant. The Court provided that the magistrate must be informed of some of the underlying circumstances on which the informant based his conclusions and the magistrate must be informed of some of the underlying circumstances from which the officer making the affidavit concluded that the informant was reliable. Subsequently, the Court in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), further defined the first part of the *Aguilar* test by providing that a search warrant based on an informer's tip can meet the standard of probable cause even if the basis of the informer's knowledge is not set forth, if "the tip described the accused's criminal activity in sufficient detail so that the magistrate may know that he is relying on something more substantial than a casual rumor * * *." 393 U.S. at 416, 89 S.Ct. at 589. We find that the affidavit in the instant case satisfied the two-pronged test of *Aguilar* as further explained by *Spinelli*. The information supplied by one of defendant Allsenberrie's co-workers on the dock indicates "that the underlying circumstances upon which the informant based his conclusions" resulted from his working relationship with the defendant on the docks. In addition, the employee identified the date of the theft, the number of cartons stolen, where the cartons were located and that the goods had not been disposed of, thus describing the accused's criminal activity in sufficient detail "so that the magistrate [knew] that he was relying on something more than a casual rumor."

■ With respect to the second part of the *Aguilar* test concerning the reliability of the informant-employee, the affidavit contains the statement of Regional Manager Ray Hunter that the employee had furnished him reliable information in the past. In addition, the informant's reliability was further strengthened by the hearsay testimony of another confidential informant whose testimony completely corroborated the information supplied by the employee-informant. While we are mindful of the inherent problems of informants whose reliability is insufficient standing alone combining to satisfy the test of reliability, we are of the opinion that the information supplied by defendant's fellow employee in this case, which was completely corroborated by another informant, satisfies the *Aguilar* test of informant reliability. *See* United States v. Hood 422 F.2d 737, (7th Cir. 1970). Further, the F.B.I. Agent stated in his affidavit that the description of the premises given by the informants was consistent with his own observations. Also, we hold that the warrant was executed properly and the testimony by F.B.I. Agent Genakos that the warrant was served at 4:26 p. m. was sufficient to satisfy the 4 o'clock service requirement of service of warrants in daytime (Rule 41(c) Fed.R.Crim.P.) and does not render the warrant's execution invalid.

Defendant Allsenberrie also alleges as reversible error the introduction into evidence of the testimony of F.B.I. Agent Genakos concerning an interview of defendant by F.B.I. Agents, prior to his arrest, in which defendant admitted knowledge of the whereabouts of several stolen cartons but refused to reveal those whereabouts. Defendant asserts that the testimony of Genakos, insofar as it reveals that defendant refused to disclose the location of the missing cartons, and that the defendant chose to terminate the interview, constitutes reversible error as being evidence of defendant's reliance on his constitutional right to remain silent. Although it is clear that defendant Allsenberrie did not specifically invoke his fifth amendment right to remain silent, defendant's decision to say nothing more concerning the whereabouts of the stolen cartons and to terminate the interview was sufficient to indicate an implied reliance on his constitutional right to remain silent. Consequently, we find that it was error for the court over defendant's objection to allow testimony into evidence concerning defendant's reliance upon his constitutional right to silence. We find, however, given the admissible admissions of defendant Allsenberrie which indicate knowledge of the whereabouts of the missing cartons and the evidence obtained via the valid search warrant, the allowance of testimony into evidence concerning defendant's implied invocation of his fifth amendment right to remain silent was merely harmless error and does not require reversal. *See* United States v. Wick, 416 F.2d 61 (7th Cir. 1969); *see also* Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Defendant Allsenberrie also raises as reversible error the allowance into evidence by the trial court of defendant's statements to F.B.I. Agent Genakos when these statements were not produced previous to trial in response to a defense initiated pretrial discovery order. Rule 16(g) of the Federal Rules of Criminal Procedure allows the trial court to allow into evidence in its discretion material which was the subject of a pretrial discovery order but which was not produced. Although we condemn intentional government non-compliance with pretrial discovery orders, we find no abuse of discretion by the court in allowing into evidence the statements of defendant made to Agent Genakos. The record indicates no prejudice to defendant by the failure of the government to produce the report prior to trial.

Defendant asks this court to review the ruling of the trial judge that a portion of a recorded statement by witness Hunter was not pertinent and therefore not required to be produced under 18 U.S.C. § 3500. We have reviewed the *in camera* statements of witness Hunter and agree with the trial court that the portion not required to be produced for defense counsel was not relevant to the instant case and therefore not producible under the statute.

At the conclusion of his charge on the law to the jury and immediately before the jury retired to deliberate a verdict, the trial judge made the following statement to the jury:

> On behalf of the Court, I wish to thank you for your participating here as jurors. I hope that you have been able to gain a better understanding of the problems of law enforcement and the trial of cases from the trial of the one in which you have participated.

Defendant asks this court to find these statements by the trial judge reversible error. We are of the opinion that statements of this nature which may be interpreted by the jury as support by the judge for either the prosecution or the defense, are better saved until after the jury has rendered a verdict. We find, however, the ambiguity of the effect of the judge's statements in the instant

case, coupled with the overwhelming evidence of defendant's guilt, renders these statements insufficient to constitute reversible error.

▆▆▆▆ The last point raised on appeal by defendant Allsenberrie involves Allsenberrie's objection to a confidential memorandum prepared by the Assistant United States Attorney for the district court's *in camera* inspection in consideration of the government's request to revoke bail.[2] Allsenberrie claims that the use of this secret report for revocation of bail affected the judge's subsequent conclusions as to the proper sentence to impose and denied him due process of law. This identical issue was recently decided by this court in United States of America v. Solomon, 422 F.2d 1110 (7 Cir., 1970). In *Solomon*, the court stated:

> While the procedure was improper, no satisfactory relief could be granted in this case. * * * Hereafter in this Circuit, however, a trial court shall not consider *in camera* a prosecutor's report about a defendant prior to sentencing or ruling on post-conviction motions unless the pertinent factual information is summarized for or disclosed to defense counsel with appropriate safeguards. (p. 1121.)

▆▆▆▆ We have reviewed the *in camera* prosecutor's report and conclude that the trial judge did not rely on the confidential information contained therein for any purpose other than the revocation of bail. In light of the prospective application to remedy this practice established in *Solomon*, we deny defendant Allsenberrie any relief.

For the foregoing reasons, the judgment is affirmed.

Affirmed.

---

2. The confidential memorandum was not part of the record in this appeal and we ordered the United States Attorney to reconstitute the reports and submit them to the trial judge for his approval. We now make this confidential memorandum a part of the record on appeal.