WOODS V. STATE OF INDIANA.

[No. 369S67. Filed Sept. 25, 1970. Rehearing granted December 30, 1970.]

*Frank E. Spencer,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Kenneth M. McDermott,* Deputy Attorney General, for appellee.

JACKSON, J.—Appellant was charged by affidavit with the crime of Robbery, said affidavit reading in pertinent part as follows:

"(T)hat NATHANIEL JONES and FRANKIE J. WOODS on or about the 7th day of MARCH, A.D. 1968, at and in the County of Marion in the State of Indiana, did then and there unlawfully, feloniously, forcibly by violence and putting LOU GOLDSTEIN, doing business as SACK'S MARKET, in fear, take from the person and possession of the said LOU GOLDSTEIN, doing business as SACK'S MARKET, money then and there of the value of TWO HUNDRED DOLLARS ($200.00), in lawful money, which property the said LOU GOLDSTEIN, doing business as SACK'S MARKET then and there lawfully held in his possession and was then and there the property of LOU

GOLDSTEIN, doing business as SACK'S MARKET, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

On April 3, 1968, appellant waived arraignment and entered a plea of not guilty to the crime as charged. Appellant waived his right to a trial by jury on June 28, 1968. On July 25, 1968, the State filed Count II of its affidavit charging the appellant with the crime of Commission of a Robbery While Armed; said additional count reads in pertinent part as follows:

"(T)hat NATHANIEL JONES AND FRANKIE J. WOODS on or about the 7th day of MARCH, A.D. 1968, at and in the County of Marion in the State of Indiana, being then and there over the age of sixteen (16) years, did then and there unlawfully, feloniously, forcibly by violence and by putting LOU GOLDSTEIN, in fear with a firearm, to-wit: REVOLVER, did then and there take from the person and possession of the said LOU GOLDSTEIN, doing business as SACK'S MARKET, money then and there of the value of TWO HUNDRED DOLLARS ($200) in lawful money, said money then and there the property of LOU GOLDSTEIN, doing business as SACK'S MARKET, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

Appellant waived arraignment and initially entered a plea of guilty as charged to Count II of the affidavit. He later withdrew said guilty plea and entered a plea of not guilty to the crime as charged. Upon the State's request, appellant was to be tried by jury.

On November 18, 1968, the State filed its Motion to Nolle Count Two; said motion reads as follows:

"Comes now, NOBLE R. PEARCY, Prosecuting Attorney for the 19th Judicial Circuit, and moves the Court to enter a *nolle prosequi* to the indictment or affidavit in the cause of the *State of Indiana* v. *Nathaniel Jones & Frankie J. Woods* for the following reasons, to-wit: the state is proceeding in a Jury Trial against the defendants on Count I."

Thereafter, the appellant was ordered released as to Count II of the affidavit.

Trial by jury commenced on November 18, 1968, and on November 19, 1968, the jury returned its verdict finding appellant guilty as charged. After having examined the Pre-Sentence Investigation Report, the court, on December 5, 1968, sentenced appellant to the Indiana State Reformatory for not less than Ten (10) nor more than Twenty-Five (25) years.

Appellant filed his motion for new trial on December 19, 1968, said motion attacking the verdict of the jury as not sustained by sufficient evidence and contrary to law. Said motion was overruled by the court on January 3, 1969. Appellant's sole Assignment of Error on appeal is that: "1. The court erred in overruling Appellant's Motion For A New Trial."

From the evidence adduced at the trial of this cause, viewed most favorably to the State, it appears that shortly before noon on March 7, 1968, two armed men entered a grocery store at 2001 Bellefontaine, City of Indianapolis, owned and operated by Lou Goldstein. At this time Goldstein and two employees, C. W. Dorsey and Sylvester Barner, were present in the store. The two men grabbed Goldstein and took him to the rear of the store where Dorsey and Barner were standing. The smaller hold-up man forced the two employees to lie down while the larger hold-up man accompanied Goldstein to the front of the store where the cash register was located. Goldstein emptied out all the cash from the cash register, and the hold-up man took the money. The latter then ransacked other drawers under the counter and took a bag of coins, some money order blanks and receipts, and a .22 caliber, pearl-handed gas pistol. Goldstein was then returned to the rear of the store and was forced to lie down next to the employees. The hold-up men then left the store. Approximately $250 was found to be missing.

Officer Joe Young of the Indianapolis Police Department arrived at the scene of the crime at approximately 11:53 a.m., and after conferring with Goldstein, Dorsey and Barner, he broadcast a general description of the hold-up men and what they were wearing. A short time later, Officer Kenneth Hendrickson observed a car which "appeared * * * to be in a hurry to get across the traffic * * *." As he approached the car from the rear, it accelerated to a high rate of speed. Hendrickson gave chase, observed the car come to an abrupt stop, and then saw two individuals run from the car in opposite directions, one carrying a coat. These men were wearing dark trousers and bright green shirts.

After broadcasting a description of these men, Hendrickson walked up to the abandoned car and observed a gun, a pair of sunglasses, and a green hat therein. He then checked the car's registration and determined that it belonged to Nathaniel Jones. Officer Hendrickson positively identified the appellant and Jones as the two men he saw "bail out" of the car.

At approximately 12:00 noon Officer Kenneth Everton observed a man wearing a green shirt in the 2100 block of North Tacoma. As he started to question him the man dropped the clothing he was carrying and ran. Everton gave chase on foot but lost sight of the man. He returned to where the clothing had been dropped and found two coats, one black and one blueish grey, containing $48 and a .22 caliber gas pistol. Goldstein testified that this pistol, State's Exhibit #1, was very similar to the one stolen from him during the robbery of his grocery store. Everton positively identified appellant as the man he attempted to question.

Forty minutes later, Officer Marcus Toney observed the appellant and Nathaniel Jones walking in the vicinity of 2300 Fernway. They were dressed in dark trousers and white T-shirts. Toney, believing the men to be the same men described in the broadcasts, arrested them on a charge of rob-

bery. Toney searched the two and found $25 on Jones and $34.90 on the appellant.

Goldstein, Dorsey and Barner were taken to the scene of appellant's arrest, however, none of them could make a positive identification there of the appellant and Jones as the individuals who perpetrated the robbery. Nonetheless, Dorsey and Barner positively identified them during the course of their in-court testimony. They stated that Jones had worn a dark coat, sunglasses, and a hat at the time the store was robbed, and that the appellant was wearing a blue coat and sunglasses. Dorsey also stated that he recognized the appellant from certain facial features.

The statute under which appellant was charged and convicted is Burns Ann. Stat. § 10-4101 (1956 Repl.) ; said statute reads in pertinent part as follows:

> "Whoever takes from the person of another any article of value by violence or by putting in fear, is guilty of robbery, and on conviction shall be imprisoned not less than ten (10) years nor more than twenty-five (25) years, and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period."

The material elements of the crime of robbery are, therefore, (1) an unlawful taking, (2) from the person of another, (3) of any article of value, (4) by violence or putting in fear.

Appellant argues that the evidence presented to the trial court was wholly insufficient to sustain his conviction. More specifically, he argues that, although the affidavit charged him with taking $200 from Lou Goldstein, there was no evidence of probative value presented to prove that said $200 was, in fact, taken. We disagree. The following testimony given by Mr. Goldstein on direct examination is significant with respect to this first essential element of the crime of robbery.

"Q. Now when you got to the register, what happened?

A. He had the gun in my back all the time and directed me to empty out the register which I did and he started ransacking the other drawers, checking to see what was there. *He got whatever was in the register and there was a bag of coins wrapped in the bottom drawer which he took, and also directed me to empty all the cash out from the cash register which he took,* and he then proceeded to rummage around down below where we kept the Money Order blanks and the Money Order receipts which we write there and he put that in his pocket and he looked around further, around there in the back end and then he took me back toward the back end where the other employees were and had me lay down on the floor also." (Emphasis supplied). (Tr. pp. 113, 114)

"Q. Approximately how much money was taken?

A. As far as we could ascertain there was approximately fifty dollars in the register not counting the loose change and there was a bag full of coins which I don't know, I would estimate there was sixty, seventy dollars worth of coins wrapped up in this bank bag, and there was between a hundred fifty and two hundred dollars in the box where the Money Orders were kept.

Q. And who did this money all belong to?

A. Well, of course, the cash was mine, it belonged to the store, and the Money Order money belonged to the Money Order people.

Q. But it was your obligation to get that money to the Money Order people?

A. Yes." (Tr. pp. 115, 116)

When the question of sufficiency of the evidence is raised as an issue on appeal this Court will consider only that evidence most favorable to the State together with all logical and reasonable inferences which may be drawn therefrom. *Grimm* v. *State* (1970), 254 Ind. 150, 258 N. E. 2d 407; *McGill v. State* (1969), 252 Ind. 293, 247 N. E. 2d 514.

Therefore, we feel that Goldstein's testimony, coupled with all the reasonable inferences to be drawn therefrom, clearly establishes a sufficient basis upon which the element of taking an article of value as charged by the affidavit may be sustained.

Appellant further argues that the verdict of the jury is contrary to law for the reason that "it was the result of the action of the State of Indiana in repeatedly inferring, in the presence of the jury, that the witnesses of the State of Indiana had been threatened and intimidated in an attempt to prevent or discourage testimony against the Defendants." (Appellant's brief, page 32.) However, on page 35 of his brief, appellant admits that "no specific objection or motion of any kind was made or directed to the actions of the Deputy Prosecuting Attorney during the trial, and therefore that no specific error at law could be assigned and preserved." We agree with this latter statement and would dismiss appellant's argument accordingly.

In *Rexroat* v. *State* (1964), 245 Ind. 688, 201 N. E. 2d 558, this Court stated:

"* * * it does not appear that appellant or his counsel made objection at the time to the deputy prosecutor's remarks. It is well settled that a party complaining of error must object thereto and also request the court for action that will remedy the alleged error after it has occurred."

Appellant must be deemed to have waived all questions arising out of such alleged misconduct of the Deputy Prosecuting Attorney.

The judgment of the trial court is affirmed.

Hunter, C.J., Arterburn, DeBruler and Givan, JJ., concur.

### PETITION FOR REHEARING

JACKSON, J.—The appellant has filed a petition for rehearing in the above entitled cause.

Appellant's contention in paragraph 2 of his petition is without merit, for this Court in its original opinion affirming appellant's conviction did not contravene a ruling precedent previously set forth in the case of *Wilson* v. *State* (1943), 222 Ind. 63, 78, 51 N. E. 2d 848. The case at bar and *Wilson* are thoroughly distinguishable on the basis of the facts presented

to the court in each. The facts peculiar to *Wilson* prompted this Court to make the following statement:

> "When the *judge* indicated that appellant was perjuring or about to perjure himself appellant was so discredited before the jury that *an adverse verdict was a foregone conclusion.*" (Emphasis supplied)

The record before this Court does not show that the remarks of the prosecuting attorney, which were not objected to when made, were so gravely prejudicial to the appellant as to conclusively seal his guilt.

Furthermore, this Court's opinion in *Wilson* seems to be based in part upon the theory that the appellant therein was denied his constitutional right to the effective assistance of counsel. There is no indication in the case at bar that appellant's counsel was so derelict in his duty to provide his client with adequate representation that he violated this constitutional mandate.

Appellant's argument in paragraph 3 of his petition is well taken, and, therefore, in light of this Court's recent opinion in *McDougall* v. *State* (1970), 254 Ind. 62, 257 N. E. 2d 674, we feel appellant's sentence should be reduced from the maximum of 25 years heretofore imposed to 20 years.

This petition for rehearing is now granted for the sole purpose of granting the petitioner a modification of his sentence, and this cause is remanded to the trial court with instructions to enter a corrected judgment and commitment nunc pro tunc sentencing the appellant to the Indiana State Reformatory for a period of not less than ten (10) nor more than twenty (20) years.

Hunter, C.J., Arterburn, Givan and DeBruler, JJ., concur.

NOTE.—Reported in 265 N. E. 2d 244.