PAUL E. FINGERS *v.* STATE OF INDIANA.

[No. 2-374A75. Filed June 12, 1975.]

*Richard L. Milan,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Gary M. Crist,* Deputy Attorney General, for appellee.

WHITE, J.—Appellant Fingers was charged by affidavit with the offense of burglary in the first degree, convicted after jury trial, and sentenced to an indeterminate term of ten to twenty years. Having perfected this appeal, he now argues that the evidence is insufficient to establish a breaking and entering by him, that certain physical evidence was obtained unlawfully, and that an in-court identification of him was tainted by pre-arrest identification procedure.

We affirm.

The evidence most favorable to the appellee State is that a housewife (Smith) came home shortly before 2 P.M. to find a white Thunderbird automobile with its trunk open in her driveway. A man standing there closed the trunk, got in the car and motioned her to move her car out of the way, which she did. He asked her if Mike lived there, and receiving a negative reply he thanked her and drove away. When she went to her house she found the door forced open and a television, a tapeplayer and speakers, and some tapes missing. She called the Marion County Sheriff and a radio alert was put out on the Indianapolis Police radio band. The alert was for a white Thunderbird driven by a tall negro. Shortly after 2 P.M. and approximately 7 miles away a city police officer (Tirmenstein) saw a white Thunderbird with three riders, all negro, coming from that general direction. He and his partner turned around and started following the car, at the same time radioing for assistance and asking their dispatcher to notify the Sheriff's office. The car stopped at a shopping center, the two passengers (who were later determined to be hitchhikers) got out, and the car continued. A few blocks further on the police stopped the car, obtained identification from the driver (Fingers), advised him that a car like his was just involved in a burglary, and told him that they would like him to wait until the sheriff arrived. A few minutes later a deputy sheriff brought Smith and her husband to the scene. She identified the car as the one that had been in her driveway and Fingers as the man who had been in her driveway. Fingers was then formally placed

under arrest. The trunk of his car was opened and both Smith and her husband identified the contents as the articles that had been taken from their residence.

Fingers argues that neither the contents of the trunk nor any testimony about them should have been received into evidence since they were the fruit of an illegal search that followed an illegal arrest. His contentions are that the original stopping of his car was an arrest made without warrant and without probable cause, and that even if the arrest be legal the search is not because it was without warrant.

As to the arrest, Fingers' argument is that the facts then known to Tirmenstein were not such as would warrant a man of reasonable caution and prudence to believe the driver of the car he observed had committed a criminal offense.

Our Supreme Court has considered this very question in two different cases. In *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738, a policeman was advised by radio of a burglary and that the suspects were fleeing in a green Chevrolet with a license prefix of 82J. No mention was made of the number or race of the suspects. Thirty minutes after the crime, at a location within the range of possible flight, a green Oldsmobile with the license prefix of 82J traveling in a direction away from the burglary was stopped. In *Williams* v. *State* (1974), 261 Ind. 547, 307 N.E.2d 457, police were advised by radio that a robbery had occurred in West Lafayette and that the suspects, two negro males, fled in an automobile heading north on U.S. 52. Two State Police officers, figuring that the suspects might be heading for Chicago and that, if so, they would possibly turn off U.S. 52 onto U.S. 231 so as to reach an Interstate Highway, positioned themselves at an intersection on U.S. 231. The third northbound car had only one visible occupant, the driver, but the police thought the driver was a negro and they followed the car. Improved lighting conditions in a town further down the road convinced one of the police officers that the driver was a negro and they stopped the car.

In both *Luckett* and *Williams* the court held that the police officers had probable cause to stop the car, although probable cause for an arrest did not then exist.

On the basis of *Luckett* and *Williams* we hold that the facts and circumstances known to Tirmenstein were sufficient to give him probable cause to stop Fingers' car.[1]

As to the search, Fingers argues that the opening of the trunk of his car was unlawful even though he had been formally placed under arrest. The evidence is conflicting as to whether Fingers consented to the search, or merely acquiesced to the search, or objected to the search, but that dispute is of no consequence. If there is probable cause for search of a car stopped on the highway, the police may either search the car without warrant or impound the car until a warrant can be obtained. *Chambers* v. *Maroney* (1970), 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419. *Luckett* v. *State, supra.* After both Fingers and the car had been identified by Smith the police unquestionably had probable cause to search the car.

Fingers' second argument is that the evidence is insufficient to prove that he broke into and entered the house since he was only seen in the driveway. If Fingers' first argument concerning the contents of his trunk were successful this second argument would have some merit. However, since a breaking and entering by someone is clearly established by the eivdence, the presence of Fingers and his car in the driveway combined with the presence of articles stolen from the house in the car is sufficient to permit the trier of fact to infer that Fingers participated in the breaking and entering.

---

1. We do not hold, and do not interpret *Luckett* and *Williams* as holding that probable cause to make an arrest is required for an investigative stop. We agree with the concurring opinion that "probable cause for an arrest is a more exacting standard than the 'reasonableness' required for an investigative stop." We do say, however, that when the "reasonableness" test is met, it is proper to say "that the police officers had probable cause to stop the car."

Fingers' final argument is that Smith's in-court identification of him was tainted by the pre-arrest confrontation identification. This alleged error was not timely raised by proper objection to Smith's testimony during trial, and it cannot be raised for the first time in this court. *Johnson* v. *State* (1972), 257 Ind. 682, 278 N.E.2d 577; *Davis* v. *State* (1972), 258 Ind. 533, 282 N.E.2d 805.

The judgment is affirmed.

Sullivan, P.J., concurs; Buchanan, J., concurs with opinion.

### CONCURRING OPINION

BUCHANAN, J.—I concur in the result only in this case. Judge White interprets *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738, and *Williams* v. *State* (1973), 261 Ind. 547, 307 N.E.2d 457, as permitting the use of the term "probable cause" in connection with an investigative stop. This is not so.

The use of a probable cause test in justification of an investigative stop was specifically prohibited by *Williams* v. *State, supra,* which reversed on transfer the majority opinion of this court (District Two) adopting a probable cause test. In so doing, then Chief Justice Arterburn adopted Justice Hunter's language in *Luckett* v. *State, supra,* stating that

> "in situations of this sort the question is 'whether the facts known . . . at the time he (a police officer) stopped the car were sufficient to warrant a man of reasonable caution in the belief that an investigation was appropriate.' "

Justice Hunter concurring in the result points up the distinction between probable cause for arrest and *reasonableness* of an investigative detention of a motor vehicle. He said,

> *"Probable cause for arrest is not the central issue before us.* Rather, *we are confronted with an examination of the reasonableness of an investigative detention* of a motor vehicle." (Emphasis supplied).

He further indicated that *Luckett* v. *State* did formulate a standard of reasonableness to be distinguished from probable cause for arrest.

This is not a matter of splitting semantic hairs, or of equivalents. An investigative detention of a moving vehicle is justifiable on the basis of whether the facts known at the time to the police officer stopping a moving vehicle are sufficient to warrant a man of reasonable caution in the belief that an investigative stop was appropriate.[1] *The requirement of probable cause for an arrest is a more exacting standard* than the "reasonableness" required for an investigative stop. *Williams* and *Luckett, supra.* The importance of the distinction is witnessed by the opposite result reached by the Supreme Court in applying the less stringent standard of reasonableness to the facts of the *Williams* case as opposed to the application of the probable cause standard by the majority of this court.

Therefore, I deem it inaccurate and misleading to utilize the term "probable cause" in connection with an investigative stop. *Luckett* and *Williams* did not do so. To meld probable cause for arrest and probable cause for an investigative stop is a dangerous intermingling of dissimilar principles. The distinction between them may easily get lost along the path of common usage.

NOTE.—Reported at 329 N.E.2d 51.

---

1. The basic case in this field is *Terry* v. *Ohio* (1968), 392 U.S. 1, which was relied on by our Supreme Court in *Williams.* Also following *Williams* and *Luckett* is *Elliott* v. *State* (1974), 262 Ind. 413, 317 N.E.2d 173.