DENNIS FRANK ZARNIK, GORDON WILLIAM BEMENT, BRIAN LEANDER BEMENT *v.* STATE OF INDIANA.

[No. 3-675A122. Filed April 6, 1977. Rehearing denied May 31, 1977. Transfer denied December 29, 1977.]

*Terrance L. Smith,* of East Chicago, for appellant Zarnik; *Jerome Rotenbert,* of Chicago, Illinois, *Barry Sherman,* of Hammond, for appellants Bement.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson, Arthur Thaddeus Perry,* Deputy Attorneys General, for appellee.

HOFFMAN, J.—Defendants-appellants Dennis Frank Zarnik, Gordon William Bement and Brian Leander Bement were convicted by a jury of first degree burglary,[1] sentenced to the custody of the Indiana Department of Correction for a period of not less than ten nor more than twenty years, and ordered to satisfy costs. Their appeals to this court have been consolidated. In addition to challenging the sufficiency of the evidence, all three appellants contend that the trial court erred

---

1. IC 1971, 35-13-4-4(a) (Burns Code Ed.).

in overruling their respective pretrial motion to suppress certain evidence and in allowing a co-defendant to testify that he had entered a guilty plea. Appellants Gordon and Brian Bement further contend that the trial court erred by failing to instruct the jury on all the essential elements of the crime charged. Appellant Zarnik further contends that the trial court erred in giving an instruction under the accessory statute.

The evidence and reasonable inferences most favorable to the State disclose that on August 5, 1974, Lena Lou Peyton resided at 6825 Leland Street in Hammond, Indiana. On such date, Mrs. Peyton was not at home but had traveled to Michigan City. Her neighbor, James Blitz observed a blue Mustang with a white top in front of Mrs. Peyton's Leland Street address at approximately 11:15 P.M. on the evening of August 5, 1974. Mr. Blitz heard knocking at the rear door of 6825 Leland, heard four individuals talking, and saw them return to the car and drive through the alley and around the block.

The blue and white Mustang again drove to Mrs. Peyton's residence and stopped. Someone got out of the car, knocked at the front door, and subsequently returned to the car.

Approximately five minutes later, the automobile stopped at the alley, one person got out and walked along the yards to the front of the house and knocked. When no one answered, the individual went to the back door and knocked. James Blitz testified he then heard the sound of glass breaking. When the individual started carrying things from the house, Mr. Blitz telephoned the police department.

He observed the blue and white car drive by again, turn the corner, drive up the alley and park behind the garage. After the car stopped in the alley, Mr. Blitz observed the individual carry a television set from the house. Mr. Blitz again called police and, as he hung up the telephone, observed a squad car drive by. He also observed the blue and white Mustang travel down the alley.

Officer Gerald Roda of the Hammond Police Department testified that he received a radio dispatch to go to 6825 Leland Street. The dispatch stated that a television set had been taken and described a "[w]hite over blue possibly a Nova" automobile. Within three minutes from the time he received the dispatch, he observed a white over blue Mustang with its lights out emerge from an alley behind 6825 Leland Street. There were four subjects in the automobile. He stopped the vehicle, observed a television set in the back seat of the car, and arrested appellants. There was also some stereo equipment in the car.

Mrs. Peyton testified that she had given no one permission to enter her home or take anything therefrom. She further testified that when she returned home, the jalousie windows on the back porch were broken, the front room was disarrayed, and her television set and her son's stereo and speakers were missing.

Appellants first contend that the trial court erred in not granting their pretrial motion to suppress certain evidence taken from the automobile in which they were arrested for the reason that the police officers did not have probable cause to arrest appellants at the time they stopped the car.

Appellants confuse the requirements of probable cause for arrest and reasonableness of an investigative detention of a motor vehicle. The absence of probable cause to effectuate a formal arrest is not dispositive of the issue of reasonableness of an investigatory stop.

In *Luckett* v. *State* (1972), 259 Ind. 174, at 179-80, 284 N.E.2d 738, at 741, our Supreme Court stated:

"It appears to be well settled that there is nothing *automatically* unconstitutional in subjecting citizens to a brief detention under circumstances where probable cause for a formal arrest is lacking. *Adams, Warden* v. *Williams*, 40 USLW 4724, (U.S. Dec. June 12, 1972), [407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612] ; *Terry* v. *Ohio* (1968), 392 U.S. 1; *Rios* v. *United States* (1960), 364 U.S. 253; *Wilson*

v. *Porter* (9th Cir. 1966), 361 F.2d 412. The constitutionality of such detention depends solely upon the reasonableness of the action taken by the police officer."

The reasonableness of an investigation conducted during a period of brief detention is a matter to be determined on an individual case basis. And, in order to resolve the question of reasonableness, it must be determined whether the facts known to the police officer at the time he stopped the automobile were sufficient to warrant a man of reasonable caution in the belief that an investigation was appropriate. *Luckett* v. *State, supra.*

In *Luckett* the officer was informed that the automobile involved in a break-in at a tire store appeared to be a green Chevrolet bearing a license plate prefix of 82J. Approximately thirty minutes after the break-in, Officer Jackson who had received the radio broadcast, stopped a green Oldsmobile containing three persons and bearing a license plate prefix 82J. Upon approaching the car, the officer saw a case of wrist watches in plain view on the back seat. The radio dispatch had stated that some of the stolen property consisted of a case of wrist watches. The officer then proceeded to place the defendants under arrest. In determining the reasonableness of the investigatory stop, our Supreme Court, at 180-81 of 259 Ind., at 742 of 284 N.E.2d, stated:

> "Jackson had a brief, but sufficient, description of the automobile; the crime had been committed only a short time beforehand, and the car was discovered traveling away from the scene of the crime at a location which was within the range of possible flight."

In discussing the inconsistency of the description of the automobile, our Supreme Court stated:

> "The fact that Jackson stopped an automobile which was not a Chevrolet, which was action conflicting with the information received in the radio dispatch, should not be considered to be a substantial deviation from a proper course of conduct, even if undertaken intentionally." (At 181 of 259 Ind., at 742 of 284 N.E.2d.)

Our Supreme Court thus found the action taken by the officer to be reasonable.

In the case at bar the evidence presented at the hearing on the motion to suppress discloses that the officers received a radio dispatch informing them that there was a burglary in progress at 6825 Leland Street, that a neighbor had reported the incident, that a television set had been taken therefrom, and that a white over blue vehicle, *possibly* a Chevrolet Nova was heading northbound in the alley. While driving past the address in response to the call, James Blitz informed the officers that the automobile was northbound in the alley. The officers immediately drove to the alley and saw a white over blue Mustang emerge therefrom with its lights out. This was within two or three minutes of the radio dispatch and immediately after the discussion with Mr. Blitz. Officer Roda stopped the vehicle, saw a television set in the back seat, and arrested the appellants. As in *Luckett*, the officers in the case at bar had a brief description of the automobile (white over blue, possibly a Chevrolet Nova), the crime had been committed shortly beforehand (approximately three minutes), and the car was discovered traveling away from the scene at a location which was within the range of possible flight (exiting the alley behind the scene of the crime). And, although the automobile was a Mustang rather than a Nova, in view of the proximity of time and place, the officers were justified in their detention of the motor vehicle.

Finally, it should be noted that during their investigation the officers were permitted to take cognizance of any items which were in plain view.

The trial court therefore did not err in denying appellants' motions to suppress.

Appellants next contend that the trial court erred in allowing Manuel Thomas Zamarripa to testify that he had entered a plea of guilty to the offense of entering to commit a felony which arose from the same transaction. In response to the

State's first series of questions, Zamarripa testified, over an objection of materiality, that he had entered such a guilty plea. The witness thereafter admitted that he was at the scene of the crime at about the time of its occurrence. Then when the witness indicated a poor memory as to whether he was at the scene, the State reminded the witness of his guilty plea. (The defense objected on the grounds that the State was attempting to impeach its own witness.)

The witness further admitted that he was with Gordon Bement, Brian Bement and Dennis Zarnik on the aforementioned date.

Later, when the witness denied he had entered the home located at 6825 Leland, the State again reminded the witness of his guilty plea and further inquired as to what felony the witness intended to commit in his guilty plea. In response to the latter question, the witness answered that the intended felony was first degree burglary.

The witness then denied that he had entered the house or that he knew any items were taken from the house.

The conviction or guilty plea of others indicted for the same offense as defendant is not substantive evidence of the defendant's guilt and generally inadmissible at the trial of the defendant. *Lincoln* v. *State* (1921), 191 Ind. 426, 133 N.E. 351. However, when such evidence is introduced at trial, the resolution of the question of whether the disclosure requires reversal is dependent upon the facts and circumstances surrounding the case.

"Basically, whether the conduct was prejudicial is a question of fact, and, in the final analysis, each case must be determined on its own particular facts, for there is no legal standard by which the prejudicial qualities of a prosecuting attorney's remarks or conduct can be gauged, and it is only when, in the light of all the circumstances attendant upon a trial, the misconduct complained of can be said to have influenced the jury's verdict and prevented a fair trial, that prejudice results." Annot., 48 A.L.R.2d 1016, at 1018 (1956).

In the case at bar, the second and third references to the guilty plea occurred after the witness recanted from an earlier statement and denied entering the premises.

IC 1971, 34-1-14-15 (Burns Code Ed.), provides as follows:

"Party producing not to impeach—Exception.—The party producing a witness shall not be allowed to impeach his credit by evidence of bad character, unless it was indispensable that the party should produce him, or in case of manifest surprise, when the party shall have this right; but he may, in all cases, contradict him by other evidence, and by showing that he has made statements different from his present testimony."

Although there was some repetition, its purpose was not to intimate to the jury appellants' guilt from the fact of the co-defendant's guilty plea, but rather to challenge the witness. As such, the case is distinguishable from *Lincoln* v. *State, supra.* There the prosecuting attorney disclosed during his opening statement to the jury that two co-defendants had been convicted, elicited testimony from several witnesses concerning the convictions of the co-defendants, and argued in his final summation to the jury that such was evidence of defendant's guilt. What the court condemned in *Lincoln* was the flagrant and repeated use of such information with the apparent intent to prejudice the defendant before the jury. *See also, Stinson* v. *State* (1974), 262 Ind. 189, 313 N.E.2d 699, wherein the court distinguished *Lincoln* on the grounds that "there is no showing in this record of any method of presentation by the prosecutor calculated to constantly remind the jury of the conviction of others" charged with the crime. (At 196 of 262 Ind., at 703 of 313 N.E.2d.) There is no indication in the case at bar that the prosecuting attorney utilized this testimony at any point in time to argue to the jury the appellants' guilt. The repetitive nature of the disclosure was to challenge the testimony of the witness and not to prejudice the appellants before the jury.

Moreover, there were other purposes in calling Zamarripa than for the sole fact of eliciting his guilty plea. The prose-

cuting attorney attempted to elicit testimony from the witness concerning the underlying circumstances surrounding the offense. *See, White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312, wherein the court found it apparent that the sole purpose of calling the witness was to elicit the improper testimony. The fact that the prosecutor in the case at bar was unsuccessful in this attempt does not render the testimony for the sole purpose of putting the guilty plea of the witness before the jury.

Additionally, on cross-examination, the witness testified that he pleaded guilty as a result of a plea bargain in which the aforementioned charge and two other pending charges of burglary were reduced to a lesser charge in exchange for the witness entering a plea of guilty on all three charges. He further stated that he did not see any of the defendants enter the home or put a television or stereo equipment in the car.

Finally, the court gave the following instruction:

"The fact that a co-defendant pleads guilty is not evidence of the guilt of any other defendant, or that the crime charged in the indictment was committed. The guilt or innocence of the defendant still on trial must be determined by the jury solely by the evidence introduced in the trial of this case."

Thus, the testimony of Zamarripa was favorable to the remaining defendants. The effect of the guilty plea was diminished by the disclosure of the plea bargain and the other testimony by the witness tending to absolve the appellants of any criminal activity. Moreover, the prosecutor did not attempt to utilize the guilty plea to argue to the jury the appellants' guilt. Finally, the trial court instructed the jury that the fact that a co-defendant pleads guilty is not evidence of another defendant's guilt. In light of these circumstances, any error in the admission of the testimony was harmless.

Appellants next contend that the evidence is insufficient to support the verdicts. When questions concerning the suffi-

ciency of evidence are presented on appeal, this court may consider only that evidence which is most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom. Further, it is not our function to weigh the evidence or determine the credibility of witnesses. *McAfee* v. *State* (1973), 259 Ind. 687, 291 N.E.2d 554. It has been held that a conviction may be sustained upon circumstantial evidence alone so long as the evidence is of such probative value that a reasonable inference of guilt may be drawn therefrom. *Gregory* v. *State* (1972), 259 Ind. 295, 286 N.E.2d 666. A conviction which rests in whole or in part upon such evidence will not be reversed unless this court can state as a matter of law that reasonable persons, whether they be the jury or the trial court, could not form inferences with regard to each material element of the offense so as to ascertain a defendant's guilt beyond a reasonable doubt. *Guyton* v. *State* (1973), 157 Ind. App. 59, 299 N.E.2d 233.

The evidence, as hereinabove stated, discloses that Mrs. Peyton had given no one permission to enter her house or remove any of the property therefrom, that the jalousie windows of Mrs. Peyton's residence were broken, that the inside of the house was disarrayed, that a television set, stereo and speakers taken therefrom were found in the automobile in which appellants were riding, and that the automobile was stopped exiting an alley behind the Peyton residence within moments after the occurrence. The evidence is thus sufficient to permit the jury to infer that the appellant(s) either broke the window of the residence and gained access to the television, stereo and speakers by the illegal entry or that an accomplice did. *See, Lloyd* v. *State* (1975), 166 Ind. App. 248, 335 N.E.2d 232 (transfer denied); *Fingers* v. *State* (1975), 164 Ind. App. 438, 329 N.E.2d 51; *Marshall* v. *State* (1974), 162 Ind. App. 392, 320 N.E.2d 830.

The remaining assertions of error concern the propriety of the trial court's instructions.

Appellants Gordon and Brian Bement contend that the trial court erred in failing to instruct the jury as to the essential elements of the crime charged. The Bements admit that the trial court's final instructions to the jury contained the affidavit and the statutory definitions of first degree burglary and entering to commit a felony. However, appellants contend that a mere reading of the affidavit and applicable statutes are insufficient and the trial court should have instructed the jury as to all the essential elements of the crime charged.

Appellants cite *Berry* v. *State* (1972), 153 Ind. App. 387, at 391, 287 N.E.2d 557, at 560, as stating the essential elements of first degree burglary as follows:

"1)    Breaking and entering
 2)    into a dwelling-house or place of human inhabitation
 3)    with the intent to commit a felony therein."

An instruction under *Berry,* however, would not be substantially different from one in the language of the statute. The appellants have not stated what element of the crime was omitted from the instruction nor have they alleged any harm resulting from the instruction.

Moreover, it is generally permissible to give instructions in the exact language of the statute. *Musick* v. *State* (1972), 258 Ind. 295, 280 N.E.2d 602. *See, Pulliam* v. *State* (1976), 264 Ind. 381, 345 N.E.2d 229. And, this is especially true "where no instructions in elaboration or exposition of the principles of the statutory definitions are requested by accused;  . . ." 23A C.J.S., *Criminal Law,* § 1194, at 496-98. Appellants Gordon and Brian Bement tendered no such instructions. The appellants have failed to demonstrate any error in the trial court's instructions to the jury on the elements of the crime charged.

Appellant Zarnik contends that the trial court erred in giving an instruction regarding accessories. However, the record

fails to disclose whether any objection was made. His failure to object at trial waives any error on appeal. Indiana Rules of Procedure, Criminal Rule 8(B).

Having found no reversible error, the judgments of the trial court must be affirmed.

Affirmed.

Garrard, J., concurs; Staton, P.J., dissents with opinion.

## DISSENTING OPINION

STATON, P.J.—I dissent. The persistent dwelling upon Zamarripa's guilty plea in a separate action by the prosecutor was flagrant prejudicial abuse. The repetitive references to Zamarripa's guilty plea and offense in the presence of the jury by the prosecutor denied Gordon and Brian Bement and Dennis Zarnik a fair trial and due process of law. I would reverse with instructions to grant the motion for a mistrial and to grant Bements and Zarnik a new trial.[1]

In the presence of the jury, Zamarripa's guilty plea and his offense were referred to approximately thirty times. *Jones v. State* (1976), 265 Ind. 447, 355 N.E.2d 402. Zamarripa, a co-defendant, had entered his plea in a separate action. The obvious effect of the repetitive references to Zamarripa's guilty plea was to place Bements and Zarnik in a shroud of guilt and to obscure any palatable defense they might offer. The prosecutor did not need to place Zamarripa on the witness stand to prove that Bements and Zarnik were with Zamarripa in the car when it was stopped by the police.

---

1. In addition to the prejudice of the guilty plea discussed herein, I note that the admission of the testimony of Zamarripa was questionable in and of itself due to the fact that (1) there had been granted a defense motion to separate witnesses; (2) Zamarripa remained in the court room even though the State was aware he would be a witness; (3) Zamarripa was also in the court room during the motion to suppress; and (4) Zamarripa's testimony was a surprise to the defense since his name was not supplied by the State as a witness. The trial court overruled the defense's objection to Zamarripa's testimony.

The mixture of repeated reference to Zamarripa's guilty plea in a separate action with Zamarippa's exculpatory remarks as to Bements' and Zarnik's involvement only served to further prejudice Bements and Zarnik since the trial judge's later remarks confirmed the guilty plea and the offense of Zamarripa. This abusive magnification of guilt by association and Zamarripa's clumsy denial of Bements' and Zarnik's participation in the offense assured a verdict of guilty.

This impression is easily gleaned from the record:

"Q. Mr. Zamarripa, directly your attention to January 10, 1975, did you have occasion to be in this Court room on that date, for the purpose of entering a plea.

"BY MR. ROTENBERG:
      Objection Your Honor, immaterial.

"BY THE COURT:
      I'll overrule the objection at this time.

"BY MR. MARLOWE:

"Q. Were you here, Mr. Zamarripa?

"A. I can't remember.

"Q. Mr. Zamarripa, did you enter a plea?

"A. Yes, I have, yes.

"Q. What plea did you enter?

"A. Guilty.

"Q. To what offense?

"A. Entering with intention to commit a Felony.

"Q. Entering with intent to commit a Felony, is that correct?

"A. Correct.

"Q. Did you make that plea in this Court room?

"A. Yes.

"Q. Was that in connection with Cause No. CR274-489, wherein you were a defendant of Burglary First Degree?

"A. Yes.

\*     \*     \*

"Q. Did you not plead guilty to a charge concerning a break-in?

"A. Yes, I did.

"BY MR. ROTENBERG:

Your Honor, he has already, answered that, he is attempting to impeach his own witness.

"BY THE COURT:

I'm sure we are talking about the same address. He's indicated a plea of guilty.

\* \* \*

"BY THE COURT:

Would you read back the last question?

"FROM THE RECORD ABOVE, THE REPORTER READ BACK THE FOLLOWING TO THE COURT AND THE JURY:

Did you not plead guilty to a charge concerning a break-in?

\* \* \*

"BY THE COURT:

He's already indicated that he entered a plea of guilty to Breaking and Entering on that date. . . .

\* \* \*

"Q. Mr. Zamarripa, directing your attention to August 5, 1974 at approximately midnight, did you have occasion to enter a home located at 6825 Leland Street, Hammond[,] Lake County, Indiana?

"A. No.

"Q. Did you not plead guilty to Entering with Intent to Commit a Felony at that same home on that same date.

"BY MR. ROTENBERG:

Objection, Your Honor, he's asked that three (3) times.

"BY THE COURT:

He's answered yes, overruled, he did." [sic]

"BY MR. MARLOWE:

"Q. And in your plea of guilty to Entering with Intent to Commit a Felony, which was intended to have been committed?

"A. Pardon.

"Q. What Felony was intended to have been committed in your plea of guilty?

"A. First Degree Burglary.

"BY MR. ROTENBERG:

Your Honor, the pleadings speak for themselves, he does not practice law and cannot state a legal conclusion.

"BY THE COURT:

Well, he's entered a plea of guilty, he may tell what he intended to do. I will allow him to answer. What Felony did you intend to commit.

"BY MR. GRECO:

Your Honor, he's also testified that he didn't go in the house.

"BY THE COURT:

That wasn't the question. The question was, what Felony did he intend to commit in his plea.

\* \* \*

"BY MR. MARLOWE:

Your Honor, at this point again the answers to my questions are becoming more and more non-responsive and inconsistent to the plea of guilty of entering.

"BY MR. ROTENBERG:

Your Honor, I object to this type of argument in front of the Jury. The answers are responsive, further there has not been any questions that the answer has not been responsive. This is just a situation where the Prosecutor is not getting the answer he wants. This witness is under oath and he also is telling the truth.

"BY THE COURT:

Well, without the opinion, that's for the Jury to determine, whether he is telling the truth or not. He stated that he was arrested that night, that he plead guilty to the offense of Entering with Intent to Commit a Felony of Burglary.

\* \* \*

"BY MR. MARLOWE:

"Q. Did you agree to testify for the State in this case as a part of your plea bargain agreement? . . .

"BY THE COURT:

    . . . I'll overrule the objection, and you can ask him why he plead guilty. . . .

"Q.  Did you agree to testify for the State in this case as a part of your plea bargain agreement?"

At the conclusion of the trial, the jury was instructed, but this late instruction did not cure the prejudice. The intervening evidence had been received by the jury in the light of the guilty plea exchange between Zamarripa and the prosecutor. The undiminished "guilty too" impression prevailed.[2] As Justice Prentice observed in *White* v. *State* (1971), 257 Ind. 64, 69, 272 N.E.2d 312, 314,

    " 'It is true that erroneous and extraneous matters sometimes get into a law suit through the zeal of counsel, and, if checked at once by the trial court and the jury is instructed, this may be cured; *but one party may not be permitted to get the other into a dying condition and then expect the court to revive him by instructions.*' " (Quoting from *Martin* v. *Lilly* [1919], 188 Ind. 139, 121 N.E. 443.) (Original emphasis.)

Zamarripa's testimony was not material. There was other evidence to prove the same fact—that Bements and Zarnik were in the car with Zamarripa when the arrest was made. The repetitious references to Zamarripa's guilty plea and offense by the prosecutor created an impasse to a fair trial which could never be removed. *Lincoln* v. *State* (1911), 191 Ind. 426, 133 N.E. 351.

The flagrant misconduct of the prosecutor can not be swept away as a harmless error. The impression of Bements' and Zarnik's guilt by association with codefendant Zamarripa for entering ". . . a home located at 6825 Leland Street, . . ." was cast into a concrete mold before the eyes and in the minds of the jury. There was no action taken to diminish the devastating effect of this impression upon the jury. Later, evidence

---

    2.  *See Sims* v. *State* (1977), 265 Ind. 647, 358 N.E.2d 746, where the Indiana Supreme Court discusses the highly prejudicial inferences likely to be drawn by the jury where reference is made to a codefendant's confession.

was received by the jury with this concrete impression well in mind. The weight given the evidence by the jury had to be heavily weighted in favor of the State and against Bements and Zarnik. A guilty verdict was assured.

The instruction given by the trial court at the conclusion of the trial came too late. It was ineffective to counter the devastating impression which was retained by the jury as it heard additional evidence. Any hope of diminishing the effect of the "guilty too" impression was lost at the end of the trial. The instruction had to be given immediately if it was to have any diminishing effect upon the impression which was repeatedly reinforced by the prosecutor when he questioned Zamarripa.

I would reverse the judgment of the trial court with instructions to grant the motion for a mistrial and to grant Bements and Zarnik a new trial.

NOTE.—Reported at 361 N.E.2d 202.