KENNETH A. MACK *v.* STATE OF INDIANA

[No. 3-1177A294. Filed September 21, 1978.]

*Joseph M. Skozen,* of Munster, for appellant.

*Theodore L. Sendak,* Attorney General of Indiana, *Terry A. Duga,* Deputy Attorney General, for appellee.

STATON, J. — After trial by jury, Kenneth A. Mack and a co-defendant, James Collier, were found guilty on two counts of Theft Over One Hundred Dollars.[1] On appeal, Mack questions the admission of certain evidence, as well as its overall sufficiency. Finding no error, we affirm.

---

1.  IC 1971, 35-17-5-3, Ind.Ann.Stat. § 10-3030 (Burns Code Ed.), repealed October 1, 1977.

The crimes in question occurred on March 13, 1977. At 5:00 p.m., Aletha Morey left her job at a restaurant and walked toward her car. She noticed an occupant in an old, battered maroon car parked near her car. She discovered a black man sitting inside her car and ordered him to get out. When he refused, she returned to the restaurant to get her manager, who called the police. Upon returning to the parking lot, Mrs. Morey noticed that the maroon car was gone; so was the man who had been inside her car, along with her citizen's band (CB) radio. She found a stretched-out coat hanger in the front seat of her car.

Nearby, at approximately 5:00 p.m., Dennis Kaegi, his wife and his daughter stopped at a restaurant following a shopping trip. At 6:00 p.m., they returned to the car and discovered that their CB and recently purchased items were missing. Kaegi found a pair of pliers in the front of the car.

Shortly after 5:00 p.m., Roger Lewis, a police officer on patrol, received several radio dispatches. The first dispatch reported that a dark-colored, battered vehicle may have been involved in a breaking and entering. The second and third dispatches referred to an older-model, maroon Chevrolet with two Negro male occupants. One of the dispatches placed the car in the vicinity of Lewis' patrol car. Lewis saw a car matching the description and followed it. The operator of the maroon vehicle did not violate any traffic laws. However, at 5:33 p.m., Lewis stopped the car and radioed for back-up vehicles. When the driver exited the car, Lewis asked him to produce a driver's license or other identification. The man showed him a military identification in the name of Kenneth Mack. Upon request, Mack's passenger exited the car. He likewise was unable to produce a driver's license. Lewis prepared to arrest Mack for driving without a license.[2]

Meanwhile, police officer Michael Krager stopped his car near the scene and approached the maroon vehicle. Upon looking in the driver's side, he saw two shopping bags in the rear of the car and a two-way radio microphone protruding from under the driver's seat. Opening the car door, he discovered a CB radio under the driver's seat and another

---

2. See IC 1971, 9-1-4-26, Ind.Ann.Stat. § 47-2701 (Burns Code Ed.); IC 1971, 9-1-4-40, Ind.AnnStat. § 47-2714 (Burns Code Ed.).

CB radio on the passenger's seat. He also found a coat hanger and pliers under the front seat. The shopping bags contained various items, including clothing and a cassette player.

Mack and his passenger were transported to the police station, where Mack was cited for driving without a license. At the station, police officer John Bellon talked separately with Mack and Collier within several hours of the arrest. Bellon read each man his *Miranda* rights. Neither Mack nor Collier signed a waiver of rights or a confession. However, each man admitted that he was involved in the thefts, but each claimed that the other man had actually entered the two cars and removed the articles.

Kenneth Zwadlo testified for the State concerning his car, which had disappeared two days before the crimes. The car matched the description of the car Mack was driving at the time of his arrest.

Aletha Morey identified Mack as the man she had ordered to leave her car. Officers Lewis and Krager identified Mack as the driver of the maroon vehicle. Krager testified to finding the stolen items in the vehicle. John Morey and Dennis Kaegi testified to the value of the items found in the maroon vehicle. Photographs of the items found in the car were admitted at trial. Finally, Officer Bellon summarized the oral statements made to him by Mack and Collier.

On appeal, Mack raises the following issues:

I. Whether the trial court erred in denying Mack's oral motion in limine and in admitting Zwadlo's testimony tending to show that the car driven by Mack had been stolen.

II. Whether the arresting officers were justified in stopping, detaining and searching Mack and the automobile he was driving.

III. Whether the trial court properly admitted inculpatory statements made by Mack to a police officer.

IV. Whether the evidence was sufficient to support Mack's conviction.

Before considering any of these issues, we wish to indicate our dissatisfaction with the record as presented by Mack. As pointed out by the State, Mack has failed to number the pages of the record con-

secutively. In fact, the record contains three sections, each separately numbered. References to the record are confusing at best.

The State cites Ind. Rules of Procedure, AP. 8.3(A)(7) in its argument that Mack has waived his allegations of error by his failure to state where the alleged errors appear in the record. While we agree that the record is not a model, we nonetheless will reach the merits of the issues Mack raises. We have examined the record to discern at what point the errors allegedly occurred.

## I.

### Zwadlo's Testimony Regarding the Car

Prior to the presentation of evidence, Mack made an oral motion in limine regarding any reference to the fact that the vehicle Mack was driving had been stolen. The motion was denied, Kenneth Zwadlo testified for the State regarding the fact that his maroon 1963 Chevy Impala had disappeared on March 11, 1977. Mack objected to the testimony as irrelevant. His objections were overruled.

Generally, evidence showing the commission of other crimes by the accused independent of the crime charged is inadmissible to prove the guilt of the accused. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843; *Land v. State* (1977), 174 Ind.App. 302, 367 N.E.2d 39. However, evidence otherwise relevant to the facts at issue is not inadmissible despite its tendency to show guilt of another crime, particularly if the two crimes are related. *Woodard v. State* (1977), 267 Ind. 19, 366 N.E.2d 1160; *Maldonado v. State, supra*, 355 N.E.2d 843.

In *Byrd v. State* (1965), 246 Ind. 255, 204 N.E.2d 651, the Supreme Court held that the trial court properly admitted evidence which showed that the automobile and the revolver used in the crime charged (inflicting injury during an attempted robbery) had been stolen by the defendant the day before the crime occurred. The court referred to the propriety of showing defendant's possession of instruments used in a crime. In *Maldonado, supra*, 355 N.E.2d 843, defendant objected to the admission of testimony concerning the theft of an automobile prior to the robbery for which he was being tried. The Supreme Court concluded that the automobile theft was sufficiently closely related to the robbery charged to be admissible as *res gestae* of the offense charged and as a happen-

ing near in time and place which completes the story of the crime on trial by proving its immediate context.

In the case before us, Mack was apprehended in a car which had disappeared from a Chicago parking lot two days earlier. The offense with which he was charged involved breaking into other parked automobiles. In the sequence of events detailed by the State's case, Mack must have used the stolen car to drive from one victim's car to the other, and then used the stolen car to escape. The disappearance of the car from its rightful owner's control occurred close in time to the events of March 13, 1977, the day of the thefts and the arrest. Zwadlo's testimony concerning the disappearance of his car helped complete the story of the separate thefts of items from parked cars. The trial court did not err in admitting Zwadlo's testimony.

## II.

### The Stop and Search of the Automobile

During trial, Mack orally moved to suppress the testimony of Officers Lewis and Krager regarding the stopping of the automobile Mack was driving, as well as evidence obtained during the warrantless search of the automobile. The motion was overruled. On appeal, Mack argues that the officers had no probable cause to stop and detain his automobile or to conduct a search.

The automobile which Mack was driving was stopped by police officers acting in response to several dispatches describing a car whose occupants *may* have been involved in a theft. At the time of the stop, the police officers did not have probable cause to arrest Mack without a warrant. The information supplied by Mrs. Morey was based only on a suspicion that the occupants of the maroon car had been involved in the theft from her car. Nonetheless, the police officers were warranted in believing that an investigatory stop of the maroon automobile was appropriate. *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208; *Luckett v. State* (1972), 259 Ind. 174, 284 N.E.2d 738; *Roby v. State* (1977), 173 Ind.App. 280, 363 N.E.2d 1039. The dispatch alerted them to watch for an early-model, battered maroon Chevrolet. The car Mack was driving, which matched the description, was spotted in the vicinity of the reported theft. An investigatory stop of the car

by the police was constitutionally permissible. *Cheeks v. State* (1977), 266 Ind. 190, 361 N.E.2d 906; *Williams v. State* (1974), 261 Ind. 547, 307 N.E.2d 457; *Fingers v. State* (1975), 164 Ind.App. 438, 329 N.E.2d 51.

After the stop was made, Officer Lewis began his investigation with a reasonable request to see Mack's operator's license. *Luckett v. State, supra*, 284 N.E.2d 738. When Mack was unable to produce a license, Lewis was authorized by statute to arrest him for driving without a license.

In the usual sequence of events, Officer Lewis would have arrested Mack and then would have impounded the car, since neither occupant could have driven it away. The stolen items would have been discovered during an inventory of the car's contents. However, in this case, Officer Krager intervened by looking into the car and noticing items, which he then removed from the car. Mack argues that Krager's search violated the Fourth Amendment's prohibition against unreasonable searches and seizures.

We need not consider whether Krager's warrantless search was justified by any of the exceptions to the constitutional requirement of a search warrant.[3] After examining the facts adduced at trial, we conclude that Mack had no standing to object to the search of the automobile he was driving.

Ordinarily, standing to object to an illegal search may rest upon one of two bases:   a reasonable expectation of freedom from governmental intrusion, or a legitimate presence on the property at the time of the search.[4] *Katz v. United States* (1967), 389 U.S. 347;

---

3.   The State argues that some of the items seized were in "plain view." However, the occupants of the car were standing at the back of the vehicle during the investigation. Also, the search was not incident to Mack's arrest for driving without a license, since Krager was not aware of the arrest.

4.   The standing requirement is also satisfied if a defendant establishes that possession of the seized items is the basis of the offense or an essential element of the offense. *Barnes v. State* (1978), 269 Ind. 76, 378 N.E.2d 839; *Burton v. State* (1973), 260 Ind. 94, 292 N.E.2d 790 (noting possession is not an essential element of the evidence proving the crime of robbery.). In the present case, possession of the stolen goods only enabled the trier of fact to infer that certain elements of the offense of theft were present and did not constitute an element of the offense. *See Burton, supra.*

88 S.Ct. 507; *Jones v. United States* (1960), 362 U.S. 257, 80 S.Ct. 725.

The courts have recognized that:

"[c]onstitutional rights are personal to an individual, and violation of a third party's constitutional rights cannot be claimed by a defendant in a trial. It is well settled that a search of a third party's property or home, even if without probable cause, cannot be made the basis of a claim by a defendant for the exclusion of such evidence." *Kirkland v. State* (1968), 249 Ind. 305, 232 N.E.2d 365, 366.

Thus, in Indiana, the courts have refused to permit a defendant to object to the admission of evidence resulting from an otherwise illegal search and seizure of a third party's property when the defendant had no right to possess the property. *Moss v. State* (1976), 168 Ind.App. 605, 344 N.E.2d 859; *Kirkland v. State, supra*, 232 N.E.2d 365; *Butler v. State* (1972), 154 Ind.App. 361, 289 N.E.2d 772. Finding standing in such a defendant would in no way serve the purpose of the exclusionary rule.

At trial, Kenneth Zwadlo testified for the State regarding the disappearance of his automobile two days before the thefts occurred. Zwadlo's description of his car matched that of the car Mack was driving at the time of his arrest. Although Mack objected to Zwadlo's testimony, he introduced no evidence refuting the inference that the car he was driving belonged to Zwadlo. When making his oral motion to suppress, Mack alleged no legitimate possessory interest in the automobile. Mack had no reasonable expectation of freedom from governmental intrusion into Zwadlo's automobile. *See Carpenter v. State* (1978), 177 Ind.App. 161, 378 N.E.2d 908. Therefore, the trial court did not err in denying Mack's motion to suppress testimony regarding the stop and search of the automobile Mack was driving.

### III.

### Voluntariness of Mack's Admissions to a Police Officer

At trial, Officer Bellon testified that, while in custody, Mack orally admitted that he had been involved in the thefts, although Collier had actually removed the articles from the victims' cars.

Upon Mack's objection a hearing was held to determine whether Mack made the statement voluntarily. IC 1971, 35-5-5-1, *et seq.*, Ind.Ann.Stat.

§§ 9-1634, *et seq.* (Burns Code Ed.). Bellon testified that he gave Mack his *Miranda* rights and that Mack indicated he understood each of his rights. Although Mack never signed a waiver of rights, he proceeded to admit to Bellon that he had been involved in the thefts. The trial court ruled that the admissions were made voluntarily.

In Indiana, the State must prove beyond a reasonable doubt the voluntariness of an admission by a defendant. *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188; *Burton v. State* (1973), 260 Ind. 94, 292 N.E.2d 790. In reviewing the trial court's ruling on the voluntariness of an admission, we must determine whether there was sufficient evidence to support the ruling. *Ortiz v. State, supra,* 356 N.E.2d 1188. There is no requirement that the State show that the defendant signed a written waiver in order to prove compliance with the constitutional requirement that he be advised of his rights prior to custodial interrogation. *Hewitt v. State* (1973), 261 Ind. 71, 300 N.E.2d 94; *Grimes v. State* (1976), 170 Ind.App. 525, 353 N.E.2d 500.

In the present case, Bellon's testimony was sufficient to allow the court to infer the existence of a valid waiver. Mack had been advised of his *Miranda* rights and had displayed an understanding of them prior to making an inculpatory statement to Bellon. There was no evidence of coercion, duress, or lack of comprehension. The trial court did not err in finding that Mack's statement was made voluntarily. The statement was properly admitted into evidence.

IV.

Sufficiency of the Evidence

In his brief, Mack raises two final issues: whether the court erred in denying his Motion for Judgment on the Evidence; and whether the verdict was supported by sufficient evidence. He joined these issues in making his argument, and we will do the same in our treatment of them.

When the sufficiency of the evidence is raised as an issue on appeal, this Court considers only the evidence most favorable to the State, together with all reasonable inferences to be drawn therefrom. The conviction will not be set aside if there is substantial evidence of probative value from which the jury could have

inferred reasonably that the defendant was guilty beyond a reasonable doubt. *Collins v. State* (1977), 266 Ind. 430, 364 N.E.2d 750; *Taylor v. State* (1972), 259 Ind. 25, 284 N.E.2d 775.

The State was required to prove that Mack knowingly obtained or exerted unauthorized control over the items taken from two different cars, with the intent to deprive the owners of the use thereof. IC 1971, 35-17-5-3, *supra; Linnemeier v. State* (1975), 165 Ind.App. 31, 330 N.E.2d 373. In Indiana, the unexplained possession of recently stolen property may give rise to the inference that the possessor either committed the theft or knew that the property had been stolen. *Linnemeier v. State, supra,* 330 N.E.2d 373; *Taylor v. State, supra,* 284 N.E.2d 775. Thus, in *Rodman v. State* (1973), 155 Ind.App. 224, 292 N.E.2d 288, a case in which the defendant had been seen in the vicinity of a burglary, the inference of guilt was drawn from his possession of stolen property shortly after the crime. Further, positive identification by a victim coupled with an acknowledgment by a co-defendant of defendant's participation has been held sufficient to support a conviction of the crime of theft. *Carter v. State* (1972), 155 Ind.App. 10, 291 N.E.2d 109.

In the present case, Mack was found to be in possession of stolen goods shortly after the thefts were committed. He was arrested in the vicinity of the thefts. He was identified by one of the victims as the man she saw in her car shortly before she discovered that her CB had been stolen. His co-defendant acknowledged that Mack had been the perpetrator of the thefts. Testimony of the victims established the value of the goods stolen to be in excess of $100 in each theft. In light of the evidence, the trial court correctly denied Mack's Motion for Judgment on the Evidence made at the close of the State's case-in-chief. Finally, the evidence supports the jury's finding that Mack was guilty on two counts of theft.

We have examined the various issues raised by Mack on appeal. Mack has failed to show that the trial court committed reversible error. The judgment of the trial court is affirmed.

Affirmed.

Garrard, P.J., and Hoffman, J., Concur.

NOTE — Reported at 380 N.E.2d 592.