

**FILED**

Aug 24 2016, 9:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen F. Hurley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.J., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner.* | August 24, 2016 <br><br> Court of Appeals Case No. <br> 49A02-1601-JV-161 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marilyn A. Moores, Judge <br><br> The Honorable Scott Stowers, Magistrate <br><br> Trial Court Cause No. <br> 49D09-1511-JD-2154 |

**Najam, Judge.**

## Statement of the Case

[1] J.J., a minor, appeals the juvenile court's true finding for dangerous possession of a firearm as a Class A misdemeanor if committed by an adult. The only

issue he raises on appeal is whether the police had reasonable suspicion to stop and search him. We affirm and remand with instructions.

## Facts and Procedural History

[2] At approximately 2:00 a.m. on November 27, 2015, Andrew Stoops was working overnight as an asset protection manager at the Macy's store located in Castleton Square Mall in Indianapolis. Stoops was in his office watching security monitors when "a couple" of Macy's employees alerted him that there was "a group of people getting loud" in the men's department. Tr. at 6. Stoops observed the group on his monitors and saw it move to another part of the store. Subsequently, several more Macy's employees called Stoops to alert him that the group was "getting . . . loud ruckus [sic]." *Id*.

[3] Stoops went out to the public part of the Macy's store and observed two groups of people loudly yelling obscenities at each other. This led Stoops to believe that a fight might occur, and he became concerned that the two groups might interfere with the safety of other customers. The groups started to shout at Stoops as well as each other. One unidentified individual in one of the groups lifted his shirt, and that action led Stoops to believe the individual had a gun. Stoops called mall security on his cellular phone and reported that there were two groups involved in a disturbance and that there might be a fight. Stoops also "mention[ed]" a gun. *Id*. at 18, 29.

[4] Stoops then observed the two groups (one a group of four and the other a group of three) leaving Macy's. He escorted the group of four out of the East entrance

and into the Dick's Sporting Goods parking lot. When mall security and the police arrived, Stoops pointed out to a responding officer the group of four located next to Dick's.

[5] Meanwhile, Officer James Russo with the Marion County Sheriff's Office and Officer Brian Silcox with the Indianapolis Metropolitan Police Department, who were assisting mall security that night due to the busy holiday season, arrived at the mall parking lot. Officer Russo knew from his professional experience that, when there is a disturbance at a mall and the individuals involved disperse, the individuals often get back together and fight. As Officer Russo drove through the parking lot towards Macy's, he observed three individuals walking in the middle of the parking lot and four other individuals walking closer to the entrance of Dick's. Officer Russo also observed Macy's employees by the parking lot pointing to the two groups. Officer Russo and other officers approached the group of four individuals closest to Dick's and stopped them to gather their identifications.

[6] Officer Silcox also drove up to where the group of four individuals had been stopped, and a Dick's employee approached him and told him that three males had just run around the corner right as the police pulled up. The employee described the three males as one "heavier set male" and two "skinnier males" and stated they were all black. Tr. at 29. Officer Silcox conveyed this information to Officer Russo and then drove in the direction toward which the three males had ran, with Officer Russo following in his own squad car. Officer Silcox saw three males matching the description given by the Dick's employee

walking in the parking lot. One of those three males was J.J. There were no other people in that area of the parking lot at that time.

[7] Officer Silcox stopped his vehicle where the three males were walking, exited his vehicle, and stated "hey guys, we got a call[. . . . I]f you can keep your hands where I can see them[?] We got a call saying there's some kind of disturbance[/]fight at Macy's and they said that there was a weapon involved. Do you have any weapons on you?" *Id.* at 31. As Officer Russo drove up and exited his vehicle to join Officer Silcox, one of the males other than J.J. responded that he did have a weapon. Upon hearing confirmation that one of the males had a gun, both officers became concerned for their safety and the safety of other responding officers.

[8] Officer Silcox then patted down the male who said he had a gun and found two guns on him. That person then informed Officer Silcox that he had a permit for the guns. Meanwhile, Officer Russo informed J.J. that he was going to pat him down for safety, and he proceeded to do so. Officer Russo patted down J.J.'s front waistband and found a loaded nine millimeter handgun.

[9] On November 28, 2015, the State filed, and the juvenile court approved, a delinquency petition alleging that J.J. had committed dangerous possession of a firearm and carrying a handgun without a license, both as Class A misdemeanors if committed by an adult. Before his December 16, 2015, fact-finding hearing, J.J. filed an oral motion to suppress evidence found during the pat-down of his person on the grounds that the officers lacked reasonable

suspicion for their initial encounter with him. The juvenile court denied that motion. Evidence introduced on the motion to suppress was incorporated into the record, and J.J. raised a continuing objection during the fact-finding hearing to the testimony and evidence resulting from the search and seizure of him. The juvenile court denied the objection. At the conclusion of the fact-finding hearing, the juvenile court entered a true finding as to Count I, dangerous possession of a firearm. As to Count II, the trial court entered either a dismissal of that count,[1] a merger with Count I,[2] or a not true finding.[3] The juvenile court placed J.J. on probation with a suspended commitment to the Indiana Department of Correction. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[10] J.J. contends that the police lacked reasonable suspicion to stop him in the mall parking lot and, therefore, that the gun they found when they searched him was inadmissible.

> In reviewing the trial court's ruling on the admissibility of evidence from an allegedly illegal search, an appellate court does not reweigh the evidence but defers to the trial court's factual determinations unless clearly erroneous, views conflicting

---

[1] See App. at 8 (Chronological Case Summary showing Count II "dismissed.").

[2] See App. at 49 (written Order on Fact Finding Hearing showing Count II "merged at disposition.").

[3] See Tr. at 51 (trial court stating at conclusion of fact finding hearing, "there is sufficient evidence to support a true finding for either count one or count two, but not necessarily both. . . .[I]n light of the fact that count one was found true, I will just show count two merged and enter a not true finding as to count two.").

evidence most favorably to the ruling, and considers afresh any legal question of the constitutionality of a search or seizure.

*Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009).

### *Fourth Amendment and Article 1, Section 11*

[11] J.J. asserts that Officer Silcox's initial approach toward him in the parking lot was an investigatory stop for which the officer lacked reasonable suspicion under the Fourth Amendment to the United States Constitution[4] and Article 1, Section 11 of the Indiana Constitution.[5] While both federal and state constitutional provisions prohibit a search without a warrant unless certain narrow exceptions apply, we analyze a Fourth Amendment claim differently than a claim under Article 1, Section 11. Under the Fourth Amendment, if a search is conducted without a warrant, the State bears the burden of proving an exception to the warrant requirement. *See, e.g.*, *Swanson v. State*, 730 N.E.2d 205, 208 (Ind. Ct. App. 2000), *trans. denied*. An officer may briefly detain an individual without a warrant or probable cause if the officer observes unusual conduct that leads him to conclude, in light of his experience, that criminal activity is afoot. *Id*. at 209 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). However,

---

[4] The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

[5] Article 1, Section 11 provides in relevant part that the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable search or seizure, shall not be violated."

reasonable suspicion must be based upon specific and articulable facts, not mere hunches. *Id.*

[12] Under Article 1, Section 11 of the Indiana Constitution, the State must show that, in the totality of the circumstances of a detention without a warrant, the police behavior was reasonable. *Id.* This analysis is similar to that set forth in *Terry*; that is, the officer's actions will be found reasonable where the facts known to the officer at the time of the stop and the reasonable inferences drawn therefrom would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Davis v. State*, 858 N.E.2d 168, 172 (Ind. Ct. App. 2006).

[13] Here, at the time the officers stopped J.J. and his companions in the mall parking lot, they had reasonable suspicion to believe that criminal activity had occurred or was about to occur. The officers had received reports that two groups of young men were involved in a disturbance in Macy's and one of them had a gun. Officer Russo was aware that such disturbances often result in actual fighting after the groups disperse. As he approached the scene, Officer Russo observed two groups of males and saw Macy's employees pointing to the two groups. Officer Silcox then arrived on the scene and learned from a Dick's employee that one of the two groups had just run around the corner as the police were approaching, and the employee described the three males in that group. Officer Silcox then drove around the corner and saw the group of three males matching the Dicks employee's description, and saw no one else in that area. At that point, given the collective knowledge of the police and the totality

of the surrounding circumstances, Officer Silcox had reasonable suspicion that the group of three males, including J.J., had engaged in criminal activity or were about to do so, and his investigatory stop of J.J. did not violate the Fourth Amendment. For the same reasons, Officer Silcox's actions toward J.J. were reasonable and did not violate Article 1, Section 11.[6]

[14] Affirmed and remanded with instructions to clarify the status of Count II, carrying a handgun without a license.[7]

Vaidik, C.J., and Baker, J., concur.

---

[6] J.J. did not argue in the trial court or on appeal that the officer's pat-down of J.J. was not justified by reasonable suspicion that J.J. was armed, so that argument has been waived. *See, e.g., Frazier v. Mellowitz*, 804 N.E.2d 796, 801 n.5 (Ind. Ct. App. 2004) (holding appellant waived argument not raised in trial court).

[7] See footnotes 1-3, supra. If the count is "not true," then it must be vacated. However, if, as the trial court indicated at the conclusion of the fact-finding hearing, there is sufficient evidence to find both counts "true" but the court cannot enter judgment on both counts due to double jeopardy concerns, merger of the two counts is appropriate. *See, e.g., Kovats v. State*, 982 N.E.2d 409, 414-15 (Ind. Ct. App. 2013).