## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 28 2016, 8:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Scott L. Barnhart
Brooke Smith
Keffer Barnhart, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Venus G. Graves, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 28, 2016 <br><br> Court of Appeals Case No. 82A04-1509-CR-1309 <br><br> Appeal from the Vanderburgh Circuit Court <br><br> The Honorable Kelli Fink, Magistrate <br><br> Trial Court Cause No. 82C01-1412-F4-5251 |

**May, Judge.**

[1] Venus G. Graves appeals the denial of her motion to suppress the evidence collected from her after a police officer stopped her outside a Target store.

Because the officer had reasonable suspicion to conduct the brief investigatory stop, we affirm and remand for further proceedings.

# Facts and Procedural History

On December 13, 2014, Jason Martin was working as a security officer at a Target in Evansville, Indiana. He was at the front of the store when two women, later identified as Graves and Valerie Nelson, entered the store. Martin recognized the women because they had shoplifted alcohol from the store in the past month. Martin retreated to the security room to watch the women's movements with the store's video surveillance. From the security cameras, Martin saw Nelson walking toward the alcohol aisle, but he could not immediately locate Graves. Martin saw Nelson place two bottles of alcohol in her purse. Martin called 9-1-1 and reported he had two women in his store who had shoplifted together on a prior occasion and one of them had just placed two bottles of alcohol in her purse. Martin relayed descriptions of the two women to the operator. Martin continued watching and saw the two women meet and then separate again to continue shopping.

Officer Nick Sammet of the Evansville Police Department was dispatched to the store for a "theft in progress." (Tr. Vol. 1 at 21.) He parked his cruiser along the sidewalk just outside the entrance to the store and waited for one of the women to exit. He testified:

> The information I had from dispatch was that there were two
> black females in the store, they gave two different clothing

descriptions, said that they had concealed alcohol, and that they had separated, and one of them was beginning to exit the store.

(*Id*. at 22.) Because Graves matched the descriptions he had received, Officer Sammet "decided to basically stop her and determine if she was involved." (*Id*. at 23.) He approached Graves and

> asked her if she knew why I was stopping her, I asked her to step to the side out of the road, which she did, she started to walk over to the sidewalk area of the front of the store. I asked her if she had anything on her, and as I started to ask her that, she started putting her hands in her pockets, and I noticed that she started dropping items from the ground or from her pockets to the ground even after I asked her to remove her hands. She just continually kept putting her hands in and out of her pockets. . . . [S]he continually reached in her pockets and pulled more items out after I had told her to get her hands out of her pockets. . . . She wasn't throwing [the items] or tossing them, but it was just pulling her hand out and dropping whatever she grabbed.

(*Id*. at 25-26.) The dropped items included "lots of jewelry," (*id*. at 26), which Officer Sammet collected, and then he walked Graves back into the Target store to determine whether the jewelry had been stolen from the store. After loss prevention workers determined the jewelry matched that available in the store, Officer Sammet placed Graves under arrest for theft and, incident to that arrest, searched her purse for additional items stolen from Target. In her purse, he found two clear bags, one containing a white substance and one containing a green leafy substance.

[4]     The State charged Graves with Level 4 felony dealing in cocaine,[1] Level 6 felony theft,[2] and Class A misdemeanor possession of a synthetic drug.[3] Graves filed a motion to suppress the evidence collected from her when Officer Sammet stopped her. After a hearing, the trial court denied her motion. Graves moved for the court to stay proceedings and to certify its denial for interlocutory appeal. The trial court certified its order, and the appellate court granted permission for Graves to file an interlocutory appeal.

# Discussion and Decision

[5]     We review a trial court's denial of a defendant's motion to suppress deferentially, construing conflicting evidence in the light most favorable to the ruling, but we will also consider any substantial and uncontested evidence favorable to the defendant. We defer to the trial court's findings of fact unless they are clearly erroneous, and we will not reweigh the evidence. When the trial court's denial of a defendant's motion to suppress concerns the constitutionality of a search or seizure, however, it presents a question of law, and we address that question de novo.

*Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014) (internal citations omitted).

---

[1] Ind. Code §§ 35-48-4-1 (2014).

[2] Ind. Code § 35-43-4-2(a) (2014).

[3] Ind. Code § 35-48-4-11.5(c).

## *Fourth Amendment*

[6] The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures by generally prohibiting them from occurring without a warrant supported by probable cause. U.S. Const. amend. IV. To deter State actors from violating that prohibition, evidence obtained in violation of the Fourth Amendment generally is not admissible in a prosecution of the citizen whose right was violated. *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013). The State has the burden of demonstrating the admissibility of evidence collected during a seizure or search. *Id*.

[7] One exception to that general prohibition against warrantless search or seizure is the *Terry* stop, which permits an officer to stop and briefly detain someone for investigation if the articulable facts known to the officer create a reasonable suspicion that criminal activity "may be afoot." *Robinson*, 5 N.E.3d at 367 (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The officer need not have probable cause to conduct such a stop, but there must be objective facts to justify thinking the citizen "stopped is, or is about to be, engaged in criminal activity." *Id*. (quoting *Armfield v. State*, 918 N.E.2d 316, 319 (Ind. 2009)). Reasonable suspicion must be based on more than "hunches." *Clark*, 994 N.E.2d at 263.

> The totality of the circumstances - the whole picture - must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. In assessing the whole picture, we must examine the facts as known

to the officer at the moment of the stop. We review findings of reasonable suspicion de novo. This is necessarily a fact-sensitive inquiry.

*Id*. at 264 (internal citation and quotations omitted).

[8] At the moment Officer Sammet approached Graves, he had received information she had entered the store with a second woman, Nelson, with whom, on a prior occasion, Graves reportedly had shoplifted alcohol. He had received information Nelson had, on this occasion, placed bottles of alcohol into her purse, but had not yet left the store. He also received information the women had separated inside the store and Target employees were unsure whether or not Graves had any stolen merchandise on her person as she left the store because they had not been able to find her on the security cameras at all times.

[9] While those facts would not have produced probable cause for Officer Sammet to place Graves under arrest at that moment, they did not need to produce probable cause. *See, e.g.*, *Mayfield v. State*, 402 N.E.2d 1301, 1306 (Ind. Ct. App. 1980) ("A police officer does not need to have probable cause to arrest in order to make an investigatory stop."), *reh'g denied*. Instead, Officer Sammet needed a particularized and objective basis to suspect Graves was part of the criminal activity that was "afoot." *Terry*, 392 U.S. at 30. It was reasonable for Officer Sammet to momentarily freeze the situation to investigate Graves' connection to the theft that Nelson was in the process of committing. *See Mack v. State*, 177 Ind. App. 537, 542-3, 380 N.E.2d 592, 596 (1978) (where car matched

description of car spotted in vicinity of a theft and the occupants "may have been involved" in the theft, investigatory stop of car was permissible under the Fourth Amendment). The trial court did not err by declaring the evidence was admissible under the Fourth Amendment.

### *Article One, Section 11*

[10] Article One, Section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[11] When an investigatory stop occurs, a citizen's right to that constitutional protection is implicated. *State v. Renzulli*, 958 N.E.2d 1143, 1146 (Ind. 2011). Nevertheless, a citizen's right to move about freely is not "absolute," as we must balance each person's right to be free from interference against the public interest in investigating crimes and protecting itself. *Id*.

> When a defendant raises a Section 11 claim, the State must show the police conduct "was reasonable under the totality of the circumstances." We consider three factors when evaluating reasonableness: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs."

*Robinson*, 5 N.E.3d 368 (internal citations omitted).

[12] Officer Sammet stopped Graves momentarily to assess whether she was involved in the shoplifting in progress by Nelson, with whom Graves arrived at the store and with whom Graves had shoplifted less than one month earlier. That brief stop was not so great an intrusion as to be unreasonable in light of Nelson's ongoing crime and Graves' connection to Nelson. *See*, *e.g.*, *J.J. v. State*, 58 N.E.3d 1002, 1005-6 (Ind. Ct. App. 2016) (investigatory stop reasonable under Article 1, Section 11 when officers knew juveniles leaving scene of verbal altercation with another group of juveniles may return to fight).

# Conclusion

[13] Officer Sammet had reasonable suspicion to conduct an investigatory stop under the Fourth Amendment of the United States Constitution, and the stop was reasonable under Section 11 of Article 1 of the Indiana Constitution. Accordingly, we affirm the trial court's denial of Graves' motion to suppress and remand for further proceedings.

[14] Affirmed and remanded.

Baker, J., and Brown, J., concur.